UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALEXANDER JACOME,

Plaintiff,

vs.

DIMITRIS VLAHAKIS, et al.

Defendants.

Case No.:  3:18-cv-0010-GPC-MDD

**ORDER**

**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT VLAHAKIS'S MOTION TO DISMISS**

**(2) GRANTING THE DEPUTY DEFENDANTS' MOTION TO DISMISS**

**(3) DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL**

**[DKT. NOS. 25, 28, 36]**

Before the Court are three motions: (1) Defendant Vlahakis' Motion to Dismiss Second Amended Complaint and to Strike Portions of the Second Amended Complaint; (2) Defendant Choufani, Linthicum, McGarvey, Parent, Seitz, and Smith's Motion to Dismiss the Second Amended Complaint; and (3) Plaintiff's Motion for Appointment of Counsel.  Dkt. Nos. 25, 28, 36.

1

On May 23, 2018, Defendant Vlahakis filed a Motion to Dismiss for Failure to State a Claim and to Strike Portions of the Second Amended Complaint. Dkt. No. 25. On June 11, 2018, Plaintiff submitted an opposition. Dkt. No. 31. Plaintiff filed a Reply on June 27, 2018. Dkt. No. 34.

On June 6, 2018, Defendants H. Choufani, J. Linthicum, K. McGarvey, J. Parent, M. Seitz, and R. Smith filed a Motion to Dismiss the Second Amended Complaint. Dkt. No. 28. Defendant J. Piri filed a Notice of Joinder to join this Motion to Dismiss on June 22, 2018.[1] Dkt. No. 32. On June 25, 2018, Plaintiff filed an opposition. Dkt. No. 33. On July 12, 2018, Plaintiff filed a reply. Dkt. No. 37.

On July 3, 2018, Plaintiff filed a motion to appoint counsel. Dkt. No. 36.

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court will **GRANT IN PART AND DENY IN PART** Defendant Vlahakis's Motion to Dismiss, **GRANT** the Deputy Defendants' Motion to Dismiss, and **DENY** Plaintiff's request for appointment of counsel.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above

---

[1] The Court will collectively refer to this group of defendants— H. Choufani, J. Linthicum, K. McGarvey, J. Parent, M Seitz, R. Smith and J. Piri—as the "Deputy Defendants." For purposes of this Order, this term does not include Defendant Vlahakis.

the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). In giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

3:18-cv-0010-GPC-MDD

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto*, 957 F.2d at 658.

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

## II.    FACTUAL BACKGROUND

### A.    Count One: Imperial Beach Taser Incident

Plaintiff alleges that Defendant Deputy Vlahakis responded to a call about an incident in Imperial Beach in which Plaintiff was involved. Dkt. No. 17, Second Amended Complaint ("SAC") at 5. Vlahakis arrived on the scene and told Plaintiff to get on the ground. *Id.* Plaintiff told Vlahakis that he had a broken arm and would be slow getting to the ground due to the pain, and Vlahakis then pointed his taser at Plaintiff and proceeded to tase him. *Id.* Plaintiff alleges that he felt an "unusual painful reaction" due to the intensity of the voltage and removed the taser cord. *Id.* Vlahakis then tased him again. Vlahakis then handcuffed Plaintiff with "extra tight handcuffs," and Plaintiff again told Vlahakis he had a broken arm. *Id.* Vlahakis took Plaintiff to the Scripps Hospital to be treated for his taser wounds and a tetanus shot. *Id.* When Plaintiff asked the doctor to look at his arm, however, Vlahakis said no. *Id.* Plaintiff claims that he was in agony during his entire arrest procedure, and Vlahakis never asked if he needed an ambulance or if he was ok. *Id.* Vlahakis finally booked Plaintiff into the San Diego County Jail and did not inform the deputies in the jail about Plaintiff's broken arm. *Id.*

4

**B.     Count Two: Booking**

Plaintiff alleges that for at least ten hours after he arrived at the jail, he asked multiple deputies— Pirri, Smith, McGarvey, Seitz, Parent, Choufani, and Linthicum—for help with his injured wrist. *Id.* at 7-8. The deputies shunned him, "ignored and smiled and made jokes" when Plaintiff asked for help. *Id.* Plaintiff claims that at this point his pain was a 20 on a scale from 1-10, was in extreme agony and torture, and was living in conditions of "extreme filth, grunge, urine, and none of the emergency buttons work." *Id.* At some point, a nurse gave Plaintiff aspirin and asked what was wrong. *Id.* He received a splint two to three days later and a cast three weeks later. *Id.* An x-ray taken two weeks after the booking showed that Plaintiff suffered a fractured wrist and the "small and large section was broken completely." *Id.* When Plaintiff was released three and a half months later, he received no instruction on how to properly remove the cast and received no x-rays to determine if the bones healed properly. *Id.* His wrist was allegedly never the same, is weaker than before, and cannot be moved in the same way as before. *Id.* Plaintiff also claims he now suffers from depression because his arm is not the same. *Id.*

**C.     Count Three: Imperial Beach ARCO Incident**

Plaintiff claims that he again encountered Defendant Vlahakis in Imperial Beach six months after the initial encounter. Defendant Vlahakis and two or three additional Imperial Beach Sheriffs spotted and approached Plaintiff at an ARCO gas station in Imperial Beach. *Id.* at 12. Vlahakis recognized Plaintiff, called him by his name, and told him to put his hands where he (Vlahakis) could see them. He said "[w]hat the fuck are you doing in I.B., Jaome [sic] or Marin." *Id.* Plaintiff asked if he was doing anything wrong, and Vlahakis responded, "We don't need no fucking drunks around here." *Id.* Plaintiff claims he was afraid for his life because last time he encountered Vlahakis he thought he was going to die. *Id.* Vlahakis told Plaintiff that he would take Plaintiff to jail if he saw Plaintiff in Imperial Beach again, and then left. In the following days, Plaintiff was in panic and afraid that if he spoke about the event whoever he told

would try to get revenge. *Id.*

## III. Defendant Vlahakis's Motion to Dismiss

### A. Motion to Strike

As a threshold matter, Defendant Vlahakis moves to strike references to 18 U.S.C. §§ 241 and 242, arguing that this Court lacks jurisdiction to impose civil liability based on an alleged violation of these criminal statutes.

Immaterial and impertinent matters may be stricken from a complaint. Fed. R. Civ. P. 12(f). Immaterial means that the matter has no bearing on the controversy before the court. *Fantasy v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Impertinent means that the matter is not relevant to issues involved in the action and could be excluded as evidence in the action. *Id.* The Court concludes that 18 USC Sections 241 and 242 do not provide for any civil liability and accordingly will **GRANT** Plaintiff's request to strike all references to these statutes as immaterial and impertinent. *See Moore v. Kamikawa*, 940 F. Supp. 260, 265 (D. Haw. 1995), aff'd, 82 F.3d 423 (9th Cir. 1996) (finding that criminal provisions 18 U.S.C. §§ 241 and 242 "provide no basis for civil liability.").

### B. Count 1: Excessive Force

Construing plaintiff's pro se complaint liberally, the Court concludes that Plaintiff has attempted to raise an Fourth Amendment excessive force claim related to his arrest. Plaintiff's SAC specifically states that "Defendant Vlahakis used **excessive force** when arresting me and in the entire 'booking process' un needed tazing and extra tight hand cuffs when he already knew about the fracture and showed no interest or care." SAC at 6 (emphasis in original). Defendant does not substantively address Plaintiff's claim of excessive force in the motion to dismiss. Pertinently, Defendant's qualified immunity argument does not address this claim.

The Fourth Amendment protects against excessive force during the course of an arrest and requires that we examine the objective reasonableness of a particular use of force

to determine whether it was indeed excessive. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To assess objective reasonableness, the Court weighs "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). *Graham* provides a non-exhaustive list of factors to consider in determining the governmental interests at stake, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Taking the facts as true as required on a motion to dismiss, Plaintiff alleges that Officer Vlahakis responded to a call two blocks away from an incident that Plaintiff had been involved in Imperial Beach. SAC at 5. Officer Vlahakis approached Plaintiff and asked him to get on the ground. Plaintiff alleges that he told the officer he had a broken arm and that he would "be slow due to the pain." *Id.* Afterwards, Plaintiff alleges that Officer Vlahakis "aggressively continued with malicious intent with a tazer [sic] gun pointed at me and fired." *Id.* Plaintiff felt an "unusual painful reaction," feared for his life, and subsequently was shot with the taser again after he pulled the taser out. *Id.* Under these facts, Plaintiff has adequately alleged a plausible excessive force claim as there is no indication that Plaintiff posed any immediate threat to the safety of the officers or that he was actively trying to resist or evade arrest. *See Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011) (use of taser in drive stun mode was unreasonable and constitutionally excessive); *United States v. Bryan*, 630 F.3d 805, 832 (9th Cir. 2010) (holding plaintiff alleged constitutional violation where he was tased in dart mode).

Furthermore, Defendant Vlahakis has not moved for qualified immunity as to this claim or even substantively addressed this claim in his motion to dismiss. Accordingly, the Court will **DENY** Defendant Vlahakis's motion to dismiss the excessive force claim contained within Plaintiff's SAC cause of action "Count 1."

### C. Count 1 and 2: Denial of Medical Assistance

Next, Plaintiff alleges that Defendant Vlahakis was deliberately indifferent to his

medical needs.

Claims for the denial of medical assistance after an arrest are analyzed under the Fourth Amendment. *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1098-99 (9th Cir. 2006). The Fourth Amendment requires officers to provide objectively reasonable post-arrest care to an apprehended suspect. *Id.* The Supreme Court previously held that the Due Process clause requires the provision of medical care to "persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that city had a constitutional obligation to provide medical care to a person injured during an arrest and that the city satisfied that duty by taking an injured suspect to a hospital). Subsequently, the Supreme Court in *Graham* held that "*all* claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment." 490 U.S. at 395 (emphasis added). The Ninth Circuit has held that a police officer who "promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment." *Tatum*, 441 F.3d at 1099. *See also Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) (constitutional requirement met when police officers seek necessary medical attention for detainee injured during apprehension by "either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox*, 792 F.2d at 1415.

Here, under the allegations of the Complaint, after the alleged taser event Deputy Vlahakis brought Plaintiff to Scripps hospital Coronado. SAC at 5. Therefore, under *Tatum* and *Maddox*, Deputy Vlahakis fulfilled his constitutional duty to provide medical care to a person injured during an arrest. *See Maddox*, 792 F.2d at 1415. Accordingly, there is no constitutional violation.

Plaintiff's second count focuses on the deliberate indifference provided by booking officers and medical staff after he was placed in the San Diego county jail. Deputy Vlahakis fulfilled his constitutional duty to provide medical care by bringing Vlahakis to the hospital. Moreover, Plaintiff has not alleged specific facts such that Deputy Vlahakis's actions was sufficiently related to any claims of post-booking deliberate indifference.

Furthermore, Defendant Vlahakis asserts that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal marks omitted). A public official is entitled to qualified immunity unless: (1) the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right and (2) the right at issue was "clearly established" in light of the specific context of the case at the time of the alleged misconduct. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011). As described above, there is no constitutional violation of the duty to provide post-arrest medical care to a defendant as Vlahakis brought Plaintiff to the hospital for treatment in accordance with his constitutional duty. Consequently, Defendant Vlahakis is also entitled to qualified immunity as to this claim.

Accordingly, the Court will **GRANT** Defendant's Motion to Dismiss the claims predicated on a denial of medical care under Count 1 and Count 2 against Defendant Vlahakis. Because the Court finds that amendment of this claim would be futile, the Court will **DENY** leave to amend. *See DeSoto*, 957 F.2d at 658.

### D.    Count 1: State Law Tort Claims

Count 1 of the SAC also alleges "negligence" and "intentional infliction of emotional distress" against Deputy Vlahakis based on actions that took place on April 13, 2016 in Imperial Beach, CA. SAC at 6. As Plaintiff points out in the SAC, the Court may exercise supplemental jurisdiction over state law claims in any civil action in which it has original jurisdiction if the state law claims form part of the same case or controversy. 28 U.S.C. § 1367(a); SAC at 1.

However, to bring a tort claim under California law, a plaintiff must allege compliance with the California Government Tort Claims Act. Government Code section 945.4 requires, as a prerequisite to maintenance of an action against a public entity for damages arising out of an alleged tort, the timely filing of a claim, and its rejection. *Fall*

*River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434 (1988). The claim must "include a general description of the injuries and the names of the public employees who caused them" and "correspond with facts alleged in the complaint." *Id.* A claim relating to a cause of action for death or injury to a person must be presented no later than six months after the accrual of the cause of action. Cal. Gov. Code § 911.2. Failure to demonstrate such compliance constitutes a failure to state a cause of action and results in the dismissal of the state law claims. *See Martinez v. Three Unknown Guards of Cal. Dep't of Corrections and Rehabiliation*, No. 1:16-cv-01467-BAM(PC), 2018 WL 3031496, at *4 (E.D. Cal. June 15, 2018); *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 786 (N.D. Cal. 2014) ("[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action."); *Butler v. Los Angeles Cty.*, 617 F. Supp. 2d 994, 1002 (C.D. Cal. 2008) (dismissing cause of action against two California deputies for "failure to meet the claim presentation requirements of the [California Tort Claims Act.]").

Here, Plaintiff has failed to allege that he filed a claim with the County of San Diego relating to the allegations set forth in the SAC. Plaintiff appears to have previously filed a claim regarding an incident that took place on August 8, 2016 in front of a Taco Bell on University Avenue and College Boulevard in the City of San Diego. Brown Decl. ¶ 1-4, Ex. A. This claim was denied by the county counsel as a late claim application. Brown Decl., Ex. B. Accordingly, the Court concludes that the August 8, 2016 incident brought before the Court involves different facts and different conduct and does not involve the conduct of Officer Vlahakis. The August 8, 2016 incident appears to have taken place in San Diego, while all incidents alleged in the SAC involve incidents in Imperial Beach, a separate city. Furthermore, Plaintiff's SAC has not alleged facts demonstrating compliance with the claim presentation requirements.

Accordingly, the Court will **GRANT** Defendant Vlahakis's motion to dismiss any state law tort claims including any claim based on negligence or intentional infliction of emotional distress. The Court will allow leave to amend in order to allow Plaintiff an

opportunity to allege compliance with the above requirements. *See DeSoto*, 957 F.2d at 658.

### E. Count 3: California Constitutional Claim

Defendant moves to dismiss any claims based on California Constitution Article 1 Section 1 as alleged in the third count of the SAC. Article 1 Section 1 provides only a right to injunctive relief, not a right to damages. *See Katzberg v. Regents of University of California*, 29 Cal. 4th 300, 314 (2002). To obtain an injunction, the plaintiff must establish that a "real or immediate threat" exists that he may be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). That harm may not be "conjectural" or "hypothetical." Here, any future conduct by Deputy Vlahakis to harm Plaintiff in the future is speculative, particularly where Plaintiff is housed in Atascadero State Hospital, not in the City of San Diego. *See Lyons*, 461 U.S. at 96 (injunctive remedy unavailable where there is showing of "any real or immediate threat that the plaintiff will be wronged again.").

Accordingly, the Court will **GRANT** Defendant's Motion to Dismiss any of Plaintiff's claims based on the California Constitution, Section 1, Article 1. The Court will **DENY** leave to amend this claim as any amendment would be futile. *See DeSoto*, 957 F.2d at 658.

### F. Count 3: Illegal Search and Seizure

Next, Defendant Vlahakis asserts that Plaintiff has not alleged adequate facts supporting a violation of his Fourth Amendment rights based on the events at the Arco station as alleged in Count 3.

The Fourth Amendment is applied to the states through the Fourteenth Amendment and protects against unreasonable searches and seizures by law enforcement officers. *Mapp v. Ohio*, 367 U.S. 643 (1961). It does not prohibit a police officer from engaging in a brief, consensual exchange with an individual in a public place, even without any suspicion that the individual is engaged in criminal activity. *See Florida v. Bostik*, 501 U.S. 429 (1991) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another place, by asking him if he is

willing to answer some questions, by putting questions to him if the person is willing to listen . . ."); *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) ("[P]olice may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave."). Consensual exchanges are not considered "seizures" under the Fourth Amendment, but a consensual encounter becomes a "seizure" when a reasonable person in the shoes of the individual approached would believe that he or she is not free to leave. *Id.*

Plaintiff alleges that the stop was unconstitutional. Defendant argues that the totality of the circumstances of the encounter do not rise to the level of a constitutional violation. The Court agrees.

The Court first finds that Officer Vlahakis's "show hands" order constituted a seizure. *See United States v. Fontenot*, No. CR 10-0778 RS, 2011 WL 634814, at *3 (N.D. Cal. Feb. 11, 2011), aff'd, 484 F. App'x 186 (9th Cir. 2012); *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (finding "show hands" order constituted seizure because a "reasonable person in [defendant's] situation would not have felt free to ignore the request of the marshals."). Nonetheless, the "Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Enslin*, 327 at 796. Any inquiry into the reasonableness of a seizure requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989)).

Here, given the strong governmental interest in officer safety, Officer Vlahakis's order to show hands is a de minimis seizure that was not unreasonable. *See United States v. Enslin*, 327 F.3d 788, 795–96 (9th Cir. 2003). This is particularly true where Vlahakis believed Plaintiff was a "drunk" and Plaintiff had a prior encounter with the officer resulting in the deployment of force. *See also United States v. Gordon*, 741 F.3d 64, 73 (10th Cir. 2014) (stating that "[m]any courts have held *de minimis* intrusions into a person's possessory interest in property, and even liberty interests are not constitutionally unreasonable."); *United States v. Knight*, No. CRIM.A. 06-10038GAO, 2006 WL 2092416, at *6 (D. Mass. July 26, 2006). Furthermore, because Plaintiff has not shown

that Officer Vlahakis violated a constitutional right, Vlahakis is also entitled to qualified immunity as to this claim.

Accordingly, the Court will **GRANT** Defendant Vlahakis's motion to dismiss Plaintiff's Fourth Amendment claim for illegal search and seizure in Count 3 with leave to amend, recognizing that providing an opportunity to correct the deficiencies of this claim would not be futile. *See DeSoto*, 957 F.2d at 658.

### G.    Counts 1-3: Miscellaneous Claims

Finally, the Defendant requests that this Court dismiss miscellaneous claims for which Plaintiff has not established sufficient factual support. These include, *inter alia*, claims for "cruel and unusual punishment," "rights under the equal protection clause," "right to free association and travel," and the "right to liberty." Plaintiff has failed to sufficiently support any of these claims with factual support and the Court **GRANTS** Defendant's motion to dismiss these claims. In any amended complaint Plaintiff will be *limited* to the claims explicitly described in the Court's conclusion below.

Accordingly, the Court will **GRANT** Defendant Vlahakis's motion to dismiss as to the state law tort claims (count 1) and the illegal search and seizure claim (count 3) with leave to amend. The Court will **GRANT** Defendant Vlahakis's motion to dismiss *without* leave to amend as to the denial of medical care claims (counts 1 and 2), California constitution claims (count 3), and the miscellaneous claims (counts 1-3). The Court **DENIES** the motion to dismiss as to Plaintiff's excessive force claim against Defendant Vlahakis related to the Imperial Beach taser incident (count 1).

## IV.    Deputy Defendants' Motion to Dismiss

The deputy defendants argue that the entire SAC should be dismissed because: (1) it does not comply with rule 8(a) because the allegations in Count 2 are "so convoluted that [they fail] to give individual deputies adequate notice of what facts are being alleged against them"; (2) the allegations in count two fail to allege sufficient facts to support a claim; (3) Plaintiff failed to allege valid facts to support a conditions of confinement

claim; and (4) there is insignificant factual support to support that individual defendants were deliberately indifferent to Plaintiff's claims. Dkt. No. 28.

In response, Plaintiff contends that he has provided sufficient factual support that the Deputy Defendants were deliberately indifferent to his medical needs. He also contends he alleged facts sufficient to support a valid conditions of confinement claim. Dkt. No. 33

### A. Deliberate Indifference

The Deputy Defendants contend that Plaintiff has not stated a valid claim for deliberate indifference because he must allege that each defendant personally violated his rights, yet he only made generalized factual allegations regarding the group as a whole. Dkt. No. 28. Plaintiff responds that he has alleged sufficient facts because he let the defendants know he was in extreme pain, and none of them helped him. Dkt. No. 33 at 6.

To establish liability under section 1983, there must be a showing of personal participation in the alleged violation of rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980) (finding that section 1983 liability must be based upon personal involvement of the defendant). A Plaintiff cannot hold an officer liable based on his or her involvement in a group, but must rather show "integral participation" in the alleged constitutional violation. *Chuman v. Wright*, 76 F.3d 292, 194 (9th Cir. 1996). The deliberate indifference standard under section 1983 also requires a showing of some "individual culpability." *Haygood v. Younger*, 769 F.2d 1350, 1354-55 (9th Cir. 1985).

Here, Plaintiff fails to provide specific facts as to the actions that each specific deputy took to be deliberately indifferent to his medical needs. Plaintiff only mentions the names of each Deputy Defendant once, when stating that they were all working in the Intake Area during his booking. Dkt. No. 17 at 8. When Plaintiff describes the alleged acts of deliberate indifference, he only alleges that "multiple deputies," "all deputies," "any of the deputies," "these deputies," "them," and "all of the above named deputies"

were deliberately indifferent to his medical needs. As currently pled, the SAC pleads only liability based on participation in a group, as defendant specifically groups the deputies together without providing the names or descriptions of each deputy who committed each alleged act. This fails to provide a prima facie showing of any "individual culpability," and thus Plaintiff does not state a claim for which relief can be granted here. *See Haygood*, 769 F.2d at 1354-55.[2]

Accordingly, the Court will **GRANT** the Deputy Defendants' motion to dismiss on this basis.

## B.    Conditions of Confinement

The Deputy Defendants also argue that Plaintiff has not stated a valid conditions of confinement claim because he uses general language such as "filth" and "grunge," and addresses only the conditions during the booking period and not during his entire stay. Dkt. No. 28 at 7. In response, Plaintiff contends that he alleges sufficient facts and provides more specific facts as to the conditions during his booking process.

A condition of confinement claim related to a pretrial detainee is analyzed under the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 534, n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees."). Nonetheless, "[b]ecause pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, we apply the same

---

[2] In *Gordon v. Cty. of Orange*, the Ninth Circuit held that the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. 888 F.3d 1118, 1125 (9th Cir. 2018). Given the lack of specific allegations as to the Deputy Defendants, Plaintiff's SAC also necessarily fails to plead a claim sufficient to meet this standard as Plaintiff has not set forth specific facts regarding *which* defendants made specific choices that deprived him of medical care.

standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The Eighth
Amendment's prohibition against cruel and unusual punishment protects prisoners not
only from inhumane methods of punishment, but also from inhumane conditions of
confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The
evaluation of conditions of confinement must be judged, to the maximum extent possible,
under an objective standard. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state
a claim for unconstitutional conditions of confinement, a plaintiff must allege a
deprivation of "the minimal civilized measures of life's necessities." *Allen v. Sakai*, 48
F.3d 1082, 1084 (9th Cir. 1994) (citing *Farmer v. Brennan*, 511 U.S. 825, 832
(1994)). Whether an inmate's conditions of confinement rises to the level of a
constitutional violation may depend in part on the length of exposure to the
conditions. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Hutto v. Finney*,
437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell . . . may be tolerable for a few
days and intolerable cruel for weeks or months.")).

Here, Plaintiff does not state a valid conditions of confinement claim. Plaintiff
alleges that for the two days he was in the booking process, he was held in the intake
holding cells which were "of extreme filth and inadequate sanitation conditions. Filth,
grunge, urine, & unclean toilet[s] minimal civilized measures of life's necessities." Dkt.
No. 17 at 7. These claims are both conclusory and lack specificity. They also apply only
to the two days that Plaintiff was in the intake area. While some conditions that span
only two days may be so egregious as to violate constitutional rights, here, Plaintiff has
not plead facts sufficient to suggest that his two days in "filth" and "grunge" rose to the
level of a deprivation of "the minimal civilized measures of life's basic necessities. *See*
*Allen*, 48 F.3d at 1087. Plaintiff does state more specific facts in his Opposition to the
Motion to Dismiss—that for two days he was exposed to "toilets with fecal matter in the
sink(s), on and in the rim of the toilets, sink and the floors were covered with fith [sic] so
bad that ordinary janitorial procedure could not fix it, also the toilets were clogged with
flies breeding in them from the unflushable urine." Dkt. No. 33 at 5. Stating specific

facts in an opposition to a motion to dismiss is, however, insufficient to survive a motion to dismiss. The complaint itself must contain the sufficient factual material. *See Janoe v. Stone*, 2008 WL 3931310, at *2 (S.D. Cal. Aug. 19, 2008) ("Although Plaintiff more fully explains the nature of the actions in his opposition to the motion to dismiss . . . Plaintiff cannot use his opposition to cure deficiencies in his pleading."); *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007) (in evaluating motion to dismiss, a court considers "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). This Court accordingly dismisses the conditions of confinement claim. *Moss*, 572 F.3d at 969 (9th Cir. 2009).

The Court will allow leave to amend the claims raised in Count 2. In a Third Amended Complaint, Plaintiff may allege specific facts as to specific Deputy Defendants, as well as allege additional facts regarding his conditions of confinement claim. *DeSoto*, 957 F.2d at 658; *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.").

## V. Motion to Appoint Counsel

Plaintiff requests counsel pursuant to 28 U.S.C. § 1915(e)(1). Dkt. No. 36 at 1. Plaintiff states that he requests counsel because: (1) he is unable to afford counsel; (2) his confinement will impair his ability to litigate because he has limited access to a law library and limited knowledge of the law; (3) he suffers side effects from a mental health medication that greatly alter his "ability and performance"; (4) he has made repeated unsuccessful attempts to obtain counsel; and (5) the legal issues are complex and require significant research and investigation. Dkt. No. 36 at 3.

There is no constitutional right to appointed counsel in a section 1983 civil action. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). A district court may, however, appoint counsel for indigent civil litigants pursuant to 28 U.S.C.

3:18-cv-0010-GPC-MDD

1915(e)(1).  *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).  An appointment of

counsel under § 1915(e)(1) requires a showing of "exceptional circumstances" which

requires an evaluation of the plaintiff's likelihood of success on the merits as well as his

ability to articulate his claims in light of the legal complexities of his case.  *Agyeman v.*

*Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).  Neither of these factors is

dispositive and must be viewed together.  *Wilborn v. Escalderon*, 789 F.2d 1328, 1331

(9th Cir. 1986).

Here, Plaintiff has not demonstrated a likelihood of success on the merits.  "While

Plaintiff's likelihood of success on the merits is hard to estimate at this stage, if he is

likely to succeed, that suggests . . . that he could probably find a private attorney to take

the case for him."  *Howard v. Farmer's Ins. Co.*, No. CV 12-01068 DDP (JCX), 2015

U.S. Dist. LEXIS 47737, at *2 (C.D. Cal. Apr. 10, 2015).  Plaintiff here contacted 22

different law firms or legal organizations, from private firms to Legal Aid of San

Diego.  Each firm or organization denied his request for representation.  *See* Dkt. No. 36

at 4-31.[3]  This suggests that Plaintiff may be unlikely to succeed on the merits of his

claim.  That Plaintiff is not particularly likely to succeed on his claims weighs strongly

against appointment of counsel here.

Further, Plaintiff does not demonstrate that he will have significant difficulty

adequately pursuing his claims without assistance of counsel.  He alleges that he is

currently confined in a psychiatric care hospital where he is prescribed medication for

"mental health" that has side effects which significantly impair his ability and

performance.  Dkt. No. 36 at 3.  However, Plaintiff demonstrates adequate writing ability,

grasp of the legal issues involved, and has timely submitted responses to all of the

motions to dismiss, which indicates that any side effects from his medication are not

---

[3] The Court also observes that several of these letters appear to be in response to Jacome's request for
support in filing a petition for writ of habeas corpus to challenge his present confinement.  *See Jacome v.*
*Price*, Dkt. No. 1, Case No. 18cv5426-FMO-SP (C.D. Cal. 2018).  Consequently, not all of these
attempts to obtain counsel are related to the Section 1983 and state law claims at issue in this case.

interfering with his ability to adequately represent himself.  His confinement and side effects from the medication alone are accordingly not sufficient to warrant appointment of counsel here.  *See Meeks v. Nunez*, No. CV 13-973 GPC (BGS), 2017 U.S. Dist. LEXIS 16503, at *8 (S.D. Cal. Feb. 6, 2017) (denying appointment of counsel pursuant to § 1915(e)(1) where a prisoner's "alleged mental disability ha[d] not affected his ability to articulate his arguments and prosecute [his] case."); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (holding that a district court did not err in denying a request for counsel where petitioner demonstrated "sufficient writing ability and legal knowledge to articulate his claim.").  Plaintiff also alleges that he requires assistance of counsel because the issues involved in the case will require significant research and investigation.  However, more is required for appointment of counsel than a showing of need for development of further facts.  *See Wilborn*, 789 F.2d at 1331 ("If all that was required to establish successfully the complexity of relevant legal issues was a demonstration of the need for development of further facts, practically all cases would involve complex legal issues [sufficient to warrant appointed counsel].").  Overall, while Plaintiff's confinement in the psychiatric hospital and side effects from his medication may hinder his ability to represent himself, thus far he has not demonstrated that he cannot adequately represent himself without assistance of counsel.

Here, where Plaintiff has demonstrated the ability to adequately represent himself and is unlikely to succeed on the merits of his case, the lack of exceptional circumstances does not justify appointing counsel.  Plaintiff's request for counsel is accordingly **DENIED**.[4]

---

[4] To the extent that Plaintiff's case survives any motion for summary judgment and is set for trial, Plaintiff may renew his motion to appoint counsel at that time.  *See, e.g.*, Southern District of California Pro Bono Panel Frequently Asked Questions, available at https://www.casd.uscourts.gov/Attorneys/CJAAppointments/SiteAssets/docs/ProBonoPanelFAQ.pdf.

# CONCLUSION

Based on the foregoing, the Court will:

- **GRANT** Defendant Vlahakis's Motion to Dismiss Plaintiff's state law tort claims (Count 1) and search and seizure claim (Count 3) with leave to amend

- **GRANT** Defendant Vlahakis's Motion to Dismiss Plaintiff's denial of medical care claims (Counts 1 and 2), California constitutional claim (Count 3) and miscellaneous claims (Counts 1-3) without leave to amend

- **DENY** Defendant Vlahakis's Motion to Dismiss Plaintiff's excessive force claim (Count 1)

- **STRIKE** references to criminal law statutes 18 USC Sections 241 and 242

- **GRANT** the Deputy Defendants' Motion to Dismiss with leave to amend.

- **DENY** Plaintiff's Motion to Appoint Counsel

Based on the above rulings, any Third Amended Complaint may only address:

- (1) Plaintiff's excessive force claim against Defendant Vlahakis re: the taser incident (alleged in SAC Count One);

- (2) Plaintiff's state law tort claims against Defendant Vlahakis re: the taser incident insofar as Plaintiff is able to plead compliance with California's Government Tort Claims Act (alleged in SAC Count One);

- (3) Plaintiff's illegal search and seizure claim against Defendant Vlahakis re: the Imperial Beach Arco incident (alleged in SAC Count Three);

- (4) Plaintiff's deliberate indifference claims to be alleged against specific Deputy Defendants (alleged in SAC Count Two);

- (5) Plaintiff's conditions of confinement claim against the Deputy Defendants (alleged in SAC Count Two)

Any amended pleading should be filed within **THIRTY DAYS** of the entry of this Order.

**IT IS SO ORDERED.**

Dated: August 6, 2018

Hon. Gonzalo P. Curiel
United States District Judge