# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER JACOME,<br><br>                     Plaintiff,<br><br>v.<br><br>DIMITRIS VLAHAKIS, et. al,<br><br>                    Defendants. | Case No.: 18cv0010-GPC-MDD<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>**[ECF. No. 42.]** |

On September 18, 2018, San Diego County Sheriff's Deputy Dimitris Vlahakis ("Deputy Vlahakis") and San Diego County Sheriff's Deputies Ryan Smith, Kyle McGarvey, Matthew Seitz, James Parent, Habib Choufani, Joshua Pirri, and Joshua Linthicum (the "Deputy Defendants") moved to dismiss the Third Amended Complaint ("TAC"). (ECF No. 42.)

Previously, the Court issued an order granting in part and denying in part the defendants' motions to dismiss pro se Plaintiff Alexander Jacome's ("Plaintiff's") Second Amended Complaint. (ECF No. 40.) The Court's order identified several deficiencies with respect to Plaintiff's 42 U.S.C. § 1983 and California state law claims, and provided Plaintiff with an opportunity to amend and fortify his pleadings. Plaintiff timely filed his TAC in response (ECF No. 41), which incorporated by reference all of the allegations he raised in his Second Amended Complaint (ECF No. 17.) The TAC urges the following claims: (1) use of excessive force by Deputy Vlahakis, (2) unlawful search and seizure by

Deputy Vlahakis, (3) negligence and intentional infliction of emotional distress by Deputy Vlahakis, (4) deliberate indifference to medical need by the Deputy Defendants, and (5) a conditions of confinement claim against the Deputy Defendants. In light of the Court's previous order denying Deputy Vlahakis's motion to dismiss the excessive force count, the only issues in contention are the latter four claims in the TAC.

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons explained below, the defendants' motion to dismiss is **granted.**

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that,

even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). In giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Where a motion to dismiss is granted, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

## II. FACTUAL BACKGROUND

### A. April 13, 2016: Imperial Beach Taser Incident

Plaintiff alleges that Deputy Vlahakis responded to a call about an incident in Imperial Beach in which Plaintiff was involved. (ECF No. 17, at 5.) Vlahakis arrived on the scene and told Plaintiff to get on the ground. (*Id.*) Plaintiff told Vlahakis that he had a broken arm and would be slow getting to the ground due to the pain, and Vlahakis then pointed his taser at Plaintiff and proceeded to tase him. (*Id.*) Plaintiff alleges that he felt an "unusual painful reaction" due to the intensity of the voltage and removed the taser cord. (*Id.*) Vlahakis then tased him again. Vlahakis then handcuffed Plaintiff with "extra tight handcuffs," and Plaintiff again told Vlahakis he had a broken arm. (*Id.*) Vlahakis took Plaintiff to the Scripps Hospital to be treated for his taser wounds and a tetanus shot. (*Id.*) When Plaintiff asked the doctor to look at his arm, however, Vlahakis said no. (*Id.*) Plaintiff claims that he was in agony during his entire arrest procedure, and Vlahakis never asked if he needed an ambulance or if he was ok. (*Id.*) Vlahakis finally booked Plaintiff into San Diego Central Jail and did not inform the deputies in the jail about Plaintiff's broken arm. (*Id.*)

### B. April 13, 2016: Booking Cell, San Diego Central Jail

Plaintiff alleges that for at least ten hours after he arrived at the jail, he asked multiple deputies—Pirri, Smith, McGarvey, Seitz, Parent, Choufani, and Linthicum—for help with his fractured left wrist. (*Id.* at 7–8.) The Deputy Defendants shunned him, "ignored and smiled and made jokes" when Plaintiff asked for help. (*Id.*) Plaintiff claims that at this point his pain was a 20 on a scale from 1-10, and that each of the Deputy Defendants "knew about Plaintiffs [sic] medical needs" but "[r]efused to let medical personnel treat Plaintiff." (ECF No. 41, at 4.) Plaintiff states that he was in extreme agony for a period of approximately two days[1], during which time "all named

---

[1] Plaintiff's Second Amended Complaint simultaneously references a span of 10 hours during which "multiple deputie[s]" who worked in intake/booking ignored his pleas, and a "2 day" stretch

Defendants . . . acted with individual culpability," and had "personal interactions with Plaintiff," wherein they "intentionally refuse[d] to let Plaintiff to be seen by medical staff." (*Id.* at 3–4.)

During his stay in the intake holding cells, Plaintiff was allegedly exposed to human waste and inhumane conditions of confinement. (*Id.* at 5.) Plaintiff recounts that for two days, he was deprived of a working toilet and drinkable water. The toilet in the holding cell was inoperable because it was clogged and overrun from the feces and urine of others who had used it previously. (*Id.*) The build-up in the toilet was so extreme that it had "beg[u]n to breed flies in it along with the waste." (*Id.*) The taint of filth and grime also pervaded Plaintiff's water source, since there was "fecal matter in the sink . . . where the spicket [sic] to drink water is located." (*Id.*) "All around and in the cells were . . . waste mixture" tracked by other detainees who unsuccessfully tried to flush the toilet and flooded the cell. (*Id.*)

At some point, a nurse gave Plaintiff aspirin and asked what was wrong. (ECF No. 17, at 7.) He received a splint two to three days later and a cast three weeks later. (*Id.*) An x-ray taken two weeks after the booking showed that Plaintiff suffered a fractured wrist and the "small and large section was broken completely." (*Id.*) When Plaintiff was released three and a half months later, he received no instruction on how to properly remove the cast and received no x-rays to determine if the bones healed properly. (*Id.*) His wrist was allegedly never the same, is weaker than before, and cannot be moved in the same way as before. (*Id.*) Plaintiff also claims he now suffers from depression because his arm is not the same. (*Id.*)

### C. October 2016: Imperial Beach ARCO Incident

Plaintiff claims that he again encountered Defendant Vlahakis in Imperial Beach

---

during which the same deputies were allegedly indifferent to his fractured wrist (ECF No. 7, 11). The TAC references only the latter 2 day time frame. For the purposes of this Order, the Court will adopt the allegations set forth in the TAC.

six months after the initial encounter. Defendant Vlahakis and two or three additional Imperial Beach Sheriffs spotted and approached Plaintiff at an ARCO gas station in Imperial Beach. (*Id.* at 12.) Vlahakis recognized Plaintiff, called him by his name, and told him to put his hands where he (Vlahakis) could see them. He said "[w]hat the fuck are you doing in I.B., Jaome [sic] or Marin." (*Id.*) Plaintiff asked if he was doing anything wrong, and Vlahakis responded, "We don't need no fucking drunks around here," (*id.*) and used "foul comments and profanity" towards Plaintiff. (ECF No. 40, at 4.) Plaintiff further inquired why he was being stopped, and Deputy Vlahakis did not answer. (*Id.*) Plaintiff claims he was afraid for his life because the last time he encountered Vlahakis he thought he was going to die. (ECF No. 17, at 12.) Vlahakis told Plaintiff that he would take Plaintiff to jail if he saw Plaintiff in Imperial Beach again, and then left. In the following days, Plaintiff was in panic and afraid that if he spoke about the event whoever he told would try to get revenge. (*Id.*)

### III. State Law Tort Claims

Plaintiff's claims for negligence and intentional infliction of emotional distress against Deputy Vlahakis arise out of actions that took place on April 13, 2016 in Imperial Beach. The Court previously dismissed both claims because Plaintiff failed to demonstrate that he complied with the California Tort Claims Act, Cal. Gov't Code §§ 801 *et seq.*, which requires Plaintiff to first present his claims to the public entity employing Deputy Vlahakis—i.e., the County of San Diego—within prescribed deadlines before suing for tort damages in court.

Pursuant to California Government Code § 950.2, "'a cause of action against a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee is barred' unless a timely claim has been filed against the employing public entity." *Mazzola v. Feinstein*, 154 Cal. App. 3d 305, 310 (1984) (quoting CAL. GOV'T CODE § 950.2). For individuals like Plaintiff who assert a "cause of action for death or injury to a person," section 911.2 requires the filing of a claim to occur "no later than six months after the accrual of the cause of action." CAL. GOV'T

CODE § 911.2.  The claim must not only "include a general description of the injuries and the names of the public employees who caused them," but must also "correspond with the facts alleged in the complaint." *Id.*

Failure to make a timely presentment to the public entity prohibits a would-be litigant from going forward, since "submission of a claim to a public entity pursuant to section 900 et seq. 'is a condition precedent to a tort action and the failure to present the claim bars the action.'" *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708, (1989) (quoting *Lutz v. Tri–City Hospital*, 179 Cal. App. 3d 807, 812, (1986)).  And, upon a pleading challenge, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004).  In this respect, an individual who failed to file within the first six months cannot merely argue a mistake of law. *See Munoz v. State of California,* 33 Cal. App. 4th 1767, 1778 (1995).  Nor can an individual "successfully argue excusable neglect when he or she fails to take any action in pursuit of the claim within the six-month period.  The claimant must, at a minimum, make a diligent effort to obtain counsel within six month after the accrual of the cause of action." *Id.*

An additional timeliness rule is applicable here.  An individual who fails to file a claim within the 6 month period specified by section 911.2 may file a late-claim application under section 911.4 for consideration by the public entity within a year of the accrual of his or her cause of action. CAL. GOV'T CODE § 911.4.  If the application is unsuccessful, the individual may petition a court for claim-relief pursuant to Section 946.6. CAL. GOV'T CODE § 946.6.  However, failure to file a late-claim application within the one-year period specified in section 911.4 divests courts of jurisdiction to grant claim-relief pursuant to section 946.6. *See Greyhound Lines, Inc. v. Cty. of Santa Clara*, 187 Cal. App. 3d 480, 488 (1986) (holding that when the underlying application to file a late claim is filed more than one year after the accrual of the cause of action, the court lacks jurisdiction to grant relief under section 946.6); *see also Santee v. Santa Clara Cty.*

7

*Office of Educ.*, 220 Cal. App. 3d 702, 713 (1990) ("[F]iling a claim application within one year is a jurisdictional prerequisite to a claim-relief petition.")

This Court's previous order found that Plaintiff had not demonstrated that he filed a claim with the County of San Diego within 6 months of the April 13, 2016 Imperial Beach incident involving Deputy Vlahakis. (ECF No. 40, at 9–11.) In an effort to cure that deficiency, Plaintiff, on August 16, 2018, mailed an "application for leave to present late claim" to the County of San Diego. (ECF No. 42-2, at 4.) His application referenced the tasering incident, the booking cell situation, and the ARCO gas station encounter. Plaintiff cited a lack of resources given his "current confinement," being indigent and "not having the proper access to legal advise/presentation" in explanation for why he failed to submit his claims earlier. (*Id.*) On September 17, 2018, the County of San Diego issued a "notice of denial of late claim application" to Plaintiff. (*Id.* at 15.) The notice advised Plaintiff that his application for leave to file a late claim was denied.

At this juncture, the Court must conclude that Plaintiff's state law causes of action are barred by the California Tort Claims Act. Plaintiff plainly failed to file a claim with the County of San Diego within 6 months of the April 13, 2016 incident from which his claims of negligence and intentional infliction of emotion distress arise. And, he did not submit his application for leave to file a late claim within the allotted one-year period: his August 16, 2018 application was more than two years tardy. To the extent the Court might have construed his pleadings as a petition for relief under section 946.6, that route is also unavailing, since the untimeliness of his underlying application to file a late claim means that the Court is without jurisdiction entertain his petition. *See Greyhound Lines*, 187 Cal. App. 3d at 488 ("When the underlying application to file a late claim is filed more than one year after accrual of the cause of action, the court is without jurisdiction to grant relief under section 946.6.").

Thus, Plaintiff is left in the same position as when he submitted his prior complaints. He has failed to allege facts demonstrating compliance with California's claim presentment requirements. In light of this failure, dismissal is warranted. *See*

8

18cv0010-GPC-MDD

*Butler v. Los Angeles Cty.*, 617 F. Supp. 2d 994, 1002 (C.D. Cal. 2008) (dismissing cause of action against two California deputies for "failure to meet the claim presentation requirements of the [California Tort Claims Act]"). Because the Court has previously granted leave to cure the deficiency, and because the Court deems an additional opportunity to amend futile, the **dismissal shall be with prejudice**.

### IV. Illegal Search and Seizure Claim

Plaintiff alleges a violation of his Fourth Amendment rights based on Deputy Vlahakis's October 2016 conduct at the Arco gas station in Imperial Beach. Plaintiff claims that Vlahakis had no probable cause to order him to show hands, and that he unconstitutionally was harassed and stopped for no other reason that he had been previously arrested by Vlahakis in the same area. (ECF No. 17, at 12–13.)

It is the law of the case that Deputy Vlahakis's interactions with Plaintiff at the Arco gas station constituted a seizure. (*See* ECF No. 40, at 12 ("The Court first finds that Office Vlahakis's 'show hands' order constituted a seizure.'"; *see also United States v. Enslin*, 4327 F. 3d 788, 796 (9th Cir. 2003) ("[T]he marshals' order to Enslin to show his hands constituted a seizure within the meaning of the Fourth Amendment.".)) Defendants urge the same argument raised in their motion to dismiss Plaintiff's Second Amended Complaint, i.e., the totality of the circumstances of the encounter do not rise to the level of a constitutional violation. Again, the Court must agree with Defendant.

The "Fourth Amendment does not proscribe all searches and seizures," and prohibits "only those that are unreasonable." *Enslin*, 327 F. 3d at 796. "Any inquiry into the reasonableness of a seizure requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989)).

Here, Plaintiff has not cured the deficiencies that plagued his Second Amended Complaint. As the Court previously recognized, "given the strong governmental interest in officer safety, Officer Vlahakis's order to show hands is a de minimis seizure that was

not unreasonable." (ECF No. 40, at 12.)  Yet, Plaintiff has failed upon amendment to state any additional allegations that would take the seizure beyond the scope of that condoned by the Ninth Circuit in *Eslin*.  327 F.3d at 795–96 ("The obligation placed upon Enslin to reveal his hands for officer safety during the search for a fugitive was *de minimis* and thus constitutionally reasonable.")  The only additions in Plaintiff's TAC was that Deputy Vlahakis used "slanderous, foul comments and profanity" during the course of the Arco gas station incident.  (ECF No. 41, at 4.)  But, this amended pleading appears no more than a characterization of allegations previously pleaded, i.e., that Deputy Vlahakis referred to him as a "fucking drunk" and swore at him, "[w]hat the fuck are you doing in I.B"?  (ECF No. 17, at 12.)

Because there has been no meaningful change[2] in Plaintiff's pleadings on the illegal search and seizure claim, the Court will **dismiss** the claim with prejudice. *Carvalho*, 629 F.3d at 892–93.  Furthermore, because Plaintiff failed to demonstrate a constitutional violation, Deputy Vlahakis is entitled to qualified immunity.

## V.     Deliberate Indifference Claim

Plaintiff alleges that the Deputy Defendants[3] who worked in "intake booking" on

---

[2]     The Court notes that Plaintiff has made a preliminary challenge under *Terry v. Ohio*, 392 U.S. 1 (1986), that Deputy Vlahakis lacked a "lawful reason" to stop him in the first place.  (ECF No. 40, at 4.)  However, the Ninth Circuit has expressly held in *Enslin* that officers need not demonstrate a reasonable suspicion of criminal activity when the nature of the show hands order is but de minimis.  327 F.3d at 797 n.29 ("Enslin's reliance upon cases that require reasonable suspicion for a *Terry* stop is misplaced . . . . [those] cases do not involve *de minimis* intrusions into individual liberty.").

It is noteworthy, however, that three years after *Enslin*, the Ninth Circuit evaluated the constitutionality of another show-hands order under the reasonable suspicion standard.  *See United States v. Manzo-Jurado*, 457 F.3d 928, 933 n.2 & 934 (9th Cir. 2006) (holding that an officer's order for truck occupants to "show their hands" constituted a seizure within the meaning of *Terry* and evaluating that seizure under the reasonable suspicion standard applicable to investigatory stops).  But, even assuming that there is some tension between *Enslin* and *Manzo-Jurado*, this Court is bound to follow *Enslin*.  *See, e.g.*, *Ross Island Sand & Gravel v. Matson*, 226 F.3d 1015, 1018 (9th Cir. 2000) (*per curiam*) (Absent a rehearing en banc, a later-in-time panel of the Ninth Circuit is without authority to overrule controlling circuit precedent.).

[3]     Plaintiff's TAC names Deputy Vlahakis for this count.  However, the Court previously dismissed Plaintiff's deliberate indifference claim with respect to Deputy Vlahakis with prejudice.  (ECF No. 40, at

or around April 13, 2016 were deliberately indifferent to his fractured left wrist. (ECF No. 17, at 11; ECF No. 41, at 4–5.)

The Court rejected an earlier version of this claim because Plaintiff failed to demonstrate that each Deputy Defendant had "individual culpability" with respect to the alleged denial of medical care, as liability under § 1983 requires. (ECF No. 40, at 14–15.) As the Court outlined in its prior order, "A Plaintiff cannot hold an officer liable based on his or her involvement in a group, but must rather show 'integral participation' in the alleged constitutional violation." (*Id.* at 14 (quoting *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).)

To wit, the actions of each individual deputy must be shown to have caused a constitutional deprivation. Controlling precedent instructs that "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). In accordance with this requirement, the Ninth Circuit in *Jones v. Williams* held that a plaintiff alleging an unconstitutional search of her residence by a team of officers was not entitled to her proposed jury instruction, as the "proposed instruction would have permitted the jury to find the individual officers liable for merely being present at the scene of the search." 297 F.3d 930, 937 (9th Cir. 2002).

As with his Second Amended Complaint, Plaintiff's TAC has only alleged liability based on participation in a group. Plaintiff's Second Amended Complaint includes a letter from the Sheriff's Internal Affairs Unit for the County of San Diego, which verified that the Deputy Defendants, i.e., Deputies Smith, McGarvey, Seitz, Parent, Choufani, Pirri, and Linthicum are deputies at the San Diego Central Jail, and had been "in charge of booking and processing" him. (ECF No. 17, at 9.) However, the letter does not show

---

9.) The Court hereby **STRIKES** the reference to Deputy Vlahakis in the section of the TAC pertaining to deliberate indifference, ECF No. 41, at 4.

the nature or extent, if any, of the Deputy Defendants' personal involvement, or "integral participation," in the denial of medical need experienced by Plaintiff.

Critically, like in his Second Amended Complaint, Plaintiff fails to individualize the actions of each Deputy Defendant. His TAC repeats familiar refrains, such as "all named Defendants individually have acted with individual culpability." (ECF No. 41, at 20.) But making legal conclusions about individual culpability is not the same as alleging sufficient factual matter in support thereof. *See Twombly*, 550 U.S. at 555 (Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Plaintiff again asks the Court to adopt a standard for § 1983 liability that would "lump all the defendants together," and again, the Court must hold the suggested standard "impermissible." *Jones*, 297 F.3d at 936.

Plaintiff has failed to state an individualized claim with respect to deliberate indifference for another time. The Court will **dismiss** with leave to amend to give Plaintiff one final opportunity to state with particularity the actions or omissions of the individual Deputy Defendants giving rise to his deliberate indifference claim.

## VI. Conditions of Confinement Claim

Plaintiff's remaining claim arises out of his detention, on or about April 13, 2016, at the intake/booking cells of the San Diego Central Jail. Plaintiff alleges that conditions of his confinement denied him "the minimal measure of life's necessities." (ECF No. 17, at 11 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).) This claim was previously rejected because Plaintiff's only non-conclusory allegations had been presented for the first time in his response to Defendants' motion to dismiss. (ECF No. 40, at 16–17 ("Plaintiff does state more specific facts in his Opposition . . . . [but s]tating specific facts in an opposition to a motion to dismiss is . . . insufficient to survive a motion to dismiss.")). Plaintiff was granted leave to amend. (*Id.*)

Plaintiff's TAC addresses the deficiencies identified by the Court. There are a number of specific allegations—this time stated in Plaintiff's complaint, rather than in his response. As recounted in the facts section, *supra*, the substance of those allegations is

that for two days Plaintiff (1) was exposed to human waste flooded on the floor of the booking cell, (2) was confronted with an "unusable" toilet "clogged . . . from all previous persons who defecated and urinated in it," which had "builded up" and "began to breed flies," (3) was supplied a sink "where the spicket to drink water" was encrusted with fecal matter, all the while (4) Plaintiff unsuccessfully sought treatment for his injured wrist. (ECF No. 41, at 5.)

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment, but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).[4] To state a claim for unconstitutional conditions of confinement, a plaintiff must allege a deprivation of "the minimal civilized measure of life's necessities." *Allen v. Sakai*, 48 F.3d 1082, 1084 (9th Cir. 1994) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Ninth Circuit case law requires the Court to consider "[t]he circumstances, nature, and duration of a deprivation of these necessities" in determining whether a constitutional violation has occurred. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The more basic the need, the shorter the time it can be withheld." *Id.* (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982)). And, as relevant here, "subjection of a prisoner to a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1314, *as amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995).

Defendants analogize Plaintiff's experience in the booking cells to those stated by the plaintiffs in *Anderson*. In that case, "[t]here was testimony from some plaintiffs that the cell was dirty and smelled bad." *Id.* Those conditions were insufficient to amount to

---

[4] Defendants have presumed that Plaintiff is a pretrial detainee. (ECF No. 7.) Although the Fourteenth Amendment governs the claims of a pretrial detainee, *Bell v. Wolfish*, 441 U.S. 520, 534 n.16 (1979), courts have recognized that, "[b]ecause pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment," the latter's standard should apply. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

an Eighth Amendment violation, however, because plaintiffs failed to show that "the sanitary limitations were more than temporary." *Id.* at 1315. Defendants further cite to language in *Hutto v. Finney*, stressing the "brief" nature of Plaintiff's two-day stay in the booking cell. (ECF No. 42-1, at 9 (quoting *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell . . . may be tolerable for a few days and intolerably cruel for weeks or months."))).

The Court does not find the comparison to *Anderson* (or the language in *Finney*) persuasive. Plaintiff has alleged much more than the mere "sanitary limitations" at issue in *Anderson*. 45 F.3d at 1314. Rather, Plaintiff has made allegations, which, if true, would demonstrate an effective denial of access to a toilet and drinking water. (Whatever access existed in theory is rendered nugatory by the "fecal matter" "builded up" in the toilet and sink.) He has also indicated that waste water had flooded the floor of the cell, and that he was directly exposed to human waste as a result. Thus, the conditions of Plaintiff's booking cell appear substantially worse than the "dirty" and "bad" smelling cells encountered in *Anderson*, or the "filthy, overcrowded cell" hypothesized in *Hutto*. The Court has little trouble holding that Plaintiff suffered a "severe" deprivation of sanitary conditions, one which need not to be lengthy to be actionable under the Eighth amendment. *Id.* ("[A] lack of sanitation that is severe *or* prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." (emphasis added)).

In this respect, *McCray v. Burrell*, a case cited by *Anderson* as an example of a severe lack of sanitation, is illuminating. 516 F.2d 357, 366–69 (4th Cir. 1974). There, the prisoner was placed naked in a concrete cell with only an excrement-encrusted pit toilet for 48 hours without access to bedding or a sink, and where he was not seen by a doctor until after he was released. The Fourth Circuit determined that because the defendants had knowledge that the plaintiff was a "suspected mental patient," the "conditions of []his confinement constitute a per se violation of the eighth amendment." *Id.* at 369. While the facts of *McCray* are not identical to the allegations at hand, the similarities are difficult to ignore. Assuming the facts in Plaintiff's TAC, as the Court

must, those in the booking cell area had knowledge of Plaintiff's repeated entreaties for medical attention. Despite Plaintiff's pleas, he was confined in the booking cell for two days, where he was denied access to a usable toilet, and forced to contend with feces on the floor and next to his water source. Upon the facts alleged, Plaintiff suffered a deprivation of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832.

However, as was the case for Plaintiff's deliberate indifference claim, Plaintiff has failed to allege plausible facts that would link the actions of the Deputy Defendants to his conditions of confinement. Recall that Plaintiff alleges only that the Deputy Defendants were all working in the booking area at San Diego Central Jail, and had been in charge of "booking and processing" him. (ECF No. 17, at 9.) Plaintiff does not allege, for example, that he brought the booking cell's conditions to the attention of any given Deputy Defendant. Nor does he allege that it was their duty to monitor and respond to complaints regarding the cell. Even if Plaintiff did not know the name of any specific Deputy Defendants he interacted with during his booking, he might have attempted to connect his constitutional claim to a given Deputy Defendant on a John Doe basis, and requested further discovery or moved for interrogatories about the Deputies' actions or responsibilities. *See Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980) (holding that defendants in § 1983 suits should be given an opportunity through discovery, or interrogatories, to ascertain the identity of alleged defendants before Rule 12(b)(6) dismissal).

However, because Plaintiff failed to do any of the above, the Court will adopt the words issued by another judge in this district, with respect to another § 1983 plaintiff's conditions of confinement claim (lodged, as it happens, against several deputies employed by the County of San Diego):

> Plaintiff cannot simply allege that Defendants are liable because they "all worked on Plaintiff's housing floor during his confinement." He must allege facts specific to each individual Defendant as to what they purportedly did to violate his rights and when they took action that allegedly violated his rights.

15

*Goolsby v. Cty. of San Diego*, No. 3:17-CV-0564-WQH-NLS, 2017 WL 6389846, at *4 (S.D. Cal. Dec. 14, 2017) (record citation omitted).

This claim is therefore **dismissed** without prejudice. Plaintiff will be given one final chance to file an amended complaint laying out how any of the deputies, individually, either personally participated in, or were integral to the violation of Plaintiff's rights. *See Jones*, 297 F.3d at 936 (requiring a § 1983 plaintiff to show "either personal participation or personal involvement").

## VII. Conclusion

Based on the foregoing, the Court will:

- **GRANT** defendants' motion to dismiss the state law tort claims and the illegal search and seizure claims against Deputy Vlahakis *with prejudice and without leave to amend.*
- **GRANT** defendants' motion to dismiss the deliberate indifference and conditions of confinement claim against the Deputy Defendants *without prejudice and with leave to amend*.
- **STRIKE** the reference to Deputy Vlahakis in the section of the TAC pertaining to deliberate indifference, ECF No. 41, at 4.
- **VACATE** the motion hearing set for this matter on December 7, 2018.

Any amended pleading must be filed by Plaintiff with **THIRTY DAYS** of the entry of this Order.

**IT IS SO ORDERED.**

Dated: December 3, 2018

Hon. Gonzalo P. Curiel
United States District Judge