UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER JACOME,<br><br>Plaintiff,<br><br>v.<br><br>DIMITRIS VLAHAKIS, et al,<br><br>Defendants. | Case No.: 18CV0010-GPC-MDD<br><br>**ORDER DENYING MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>**[ECF. No. 54.]** |

Before the Court is Defendant San Diego County Sheriff's Deputy Dimitris Vlahakis ("Deputy Vlahakis") and San Diego County Sheriff's Deputies Ryan Smith, Kyle McGarvey, Matthew Seitz, James Parent, Habib Choufani, Joshua Pirri, and Joshua Linthicum ("Deputy Defendants")'s March 25, 2019 motion to dismiss (ECF No. 54) pro se Plaintiff Alexander Jacome's Fourth Amended Complaint ("FAC"). (ECF No. 52.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the motion suitable for adjudication without oral argument. For the reasons explained below, the Defendants' motion to dismiss is **denied.**

### I. PROCEDURAL HISTORY

During the course of litigation, Plaintiff has filed and the Court has ruled on the sufficiency of a number of Plaintiff's complaints. On August 6, 2018, the Court granted in part and denied in part a motion to dismiss Plaintiff's second amended complaint

1

("SAC"), holding, *inter alia*, that Plaintiff alleged a plausible excessive force claim against Deputy Vlahakis. (ECF No. 40, at 7.) The Court granted dismissal with leave to amend on four other § 1983 and state law claims. (*Id.* at 20.)

Thereafter, on September 4, 2018, Plaintiff filed a Third Amended Complaint ("TAC") which re-pleaded the five claims in his second amended complaint. (ECF No. 41.) Defendants again filed a motion to dismiss, but this time, in light of the Court's previous findings as to excessive force, did not move to dismiss as to the excessive force claim. (ECF No. 42-1, at 2.) On December 3, 2018, the Court issued an order granting defendants' motion to dismiss Plaintiff's Third Amended Complaint. Because the Defendants did not challenge the excessive force claim asserted against Deputy Vlahakis, the Court observed that "the only issues in contention are the [other] four claims in the FAC." (ECF No. 47, at 2.) The Court's order dismissed two of those claims with prejudice and granted Plaintiff leave to amend and fortify his deliberate indifference and conditions of confinement claim against the Deputy Defendants. (*Id.* at 16.)

Plaintiff timely filed his FAC—the operative complaint—thereafter, asserting the following two § 1983 claims against the Deputy Defendants: (1) deliberate indifference to medical need[1] and (2) conditions of confinement. (ECF No. 52.) Notably, the FAC did not contain any allegations as to the excessive force claim against Deputy Vlahakis. Plaintiff subsequently failed to file and serve an opposition to Defendants' motion to dismiss due by June 14, 2019. (*See* ECF 58.)

On June 21, 2019, Defendants filed a notice of lack of opposition to their motion to dismiss, by which Defendants requested that the Court dismiss Plaintiff's FAC with prejudice for failure to oppose. (ECF No. 60); *see generally* Civ. L.R. 7.1.f.3.c. (stating that failure to follow rules for opposing motions "may constitute a consent to the granting

---

[1] Plaintiff's first cause of action for deliberate indifference is articulated with respect to all defendants named in the action. (ECF No. 52, at 10.) However, the Court previously dismissed Plaintiff's deliberate indifference claim against Deputy Vlahakis with prejudice. (ECF No. 40, at 9.) The Court hereby **STRIKES** any reference to Deputy Vlahakis as a defendant to Plaintiff's deliberate indifference and conditions of confinement claims. (ECF No. 52, at 2.)

of a motion . . . by the court").

The Court, however, declines to grant Defendants' motion because it appears that Plaintiff's failure to file stems directly from his proceeding pro se in confinement. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) (stating that pro se litigants "must be ensured meaningful access to the courts"). On June 12, 2019, Plaintiff filed a notice of change of address with the Court advising that he had become incarcerated at San Diego Jail – George Bailey Detention Facility. (ECF No. 59.) On August 22, 2019, approximately a month after the deadline on his opposition brief had passed, Plaintiff sent a letter to the Court entitled "motion to proceed to excessive force." (ECF No. 63.) Plaintiff advised that he had not filed an opposition because he has been in custody at the San Diego County Jail, and that his detention there had "limited his ability to properly act on this action," because he had been "wrongfully denied" access to the jail facility's law library. (*Id.* at 63, at 1.) Plaintiff states that he would be willing to "accept" dismissal on the deliberate indifference and conditions of confinement claims if he would be permitted to proceed on the excessive force claim against Deputy Vlahakis.

The Court is not prepared to permit Plaintiff's proposed course of action for a number of reasons. At the outset, the Court notes that Plaintiff's indicates that the reason for his failure to file an opposition is a lack of access to the law library in jail. To the extent that Plaintiff was precluded from litigating his case because of a denial of access to the law library or other such resources, the Court finds good cause to overlook Plaintiff's failure to file an opposition brief.

To the extent that Plaintiff felt it necessary to barter his deliberate indifference and conditions of confinements claims to preserve his excessive force claim, the request must also be denied because (1) his excessive force claim was not stated in his FAC and Plaintiff cannot proceed on the basis thereon, and because (2) his deliberate indifference and conditions of confinements claim are sufficiently alleged to survive the motion to dismiss.

To address the first point: Plaintiff has conditioned his consent to dismiss the

deliberate indifference and conditions of confinement claims on his belief that he may proceed on his excessive force claim against Deputy Vlahakis. But Plaintiff's proposal is based on a mistaken belief that he has a current, live excessive force claim. Although the excessive force claim survived Defendants' motion to dismiss the second amended complaint, Plaintiff did not re-plead that claim in his FAC. *See* Civ. L.R. 15.1 (requiring that "[e]very pleading to which amendment is permitted as a matter of right or has been allowed by court order, must be complete in itself without reference to the superseded pleading."). By failing to re-plead the excessive force claim in his FAC, Plaintiff has left it out of his operative pleading and cannot litigate on that basis. *See Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (observing that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." (citations omitted)); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (noting that once a plaintiff amends the complaint, the previous pleading no longer serves any function in the case). Thus, because the FAC does not contain an excessive force claim against Deputy Vlahakis, there is no viable excessive force claim upon which Plaintiff might proceed at this juncture.[2]

To address the second point, the Court finds, for reasons more fully articulated *infra*, that Plaintiff's deliberate indifference and conditions of confinement claims sufficiently alleged to survive Defendants' motion to dismiss. Because Plaintiff's failure to oppose their dismissal is excused, and because both claims are plausibly alleged, the

---

[2] The Court is sympathetic to Plaintiff's position—without access to a law library, and without counsel, Plaintiff would have little reason to know the rules of civil procedure requiring him to file an amended pleading which contains both the claims to be amended (the deliberate indifference and conditions of confinement claims), and the claims which previously survived a motion to dismiss (the excessive force claim). *See Armenta v. Paramo*, Case No. 3:16-cv-02931-BTM-KSC, 2017 WL 3118775 (S.D. Cal. Jul. 21, 2017) (explaining that an amended complaint must be one single document, "which is complete by itself, and without reference to any previous pleading").

Because the Court finds Plaintiff's failure to re-plead the excessive force claim entirely excusable, the Court will grant Plaintiff an opportunity to re-file a fifth amended complaint containing (1) the excessive force claim against Deputy Vlahakis, (2) the deliberate indifference claim, and (3) the conditions of confinement claim.

Court will not permit Plaintiff to forego his two FAC claims. The Court will instead address them on their merits.

## II.　LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a plaintiff need not give "detailed factual allegations," one must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Twombly,* 550 U.S. at 557).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

In addition, courts "liberally construe[]" documents filed pro se, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), affording pro se plaintiffs the benefit of the doubt. *Thompson*, 295 F.3d at 895; *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th

Cir. 1988); *see also Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) ("[T]he Court has held pro se pleadings to a less stringent standard than briefs by counsel and reads pro se pleadings generously, 'however inartfully pleaded.'"). Pro se litigants "must be ensured meaningful access to the courts." *Rand*, 154 F.3d at 957. Yet, in giving liberal interpretation to a pro se complaint, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). As with pleadings drafted by lawyers, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). The Court has held that it is proper to dismiss a pro se complaint for failure to state a claim upon which relief could be granted if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (*per curiam*).

42 U.S.C. § 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). An officer under color of law can be held liable for a constitutional violation under § 1983 "only when there is a showing of 'integral participation' or 'personal involvement' in the unlawful conduct, as opposed to mere presence at the scene." *Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018) (quoting *Jones v. Williams*, 297 F.3d 930, 935–36 (9th Cir. 2002)). Integral participation, however, "does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004).

### III.  FACTUAL BACKGROUND

Because this case comes to the Court in a Rule 12(b)(6) posture, the Court takes as true the factual allegations in the operative complaint.

/ / /

### A. Imperial Beach Taser Incident

Plaintiff alleges that Deputy Vlahakis responded to a call for an incident in Imperial Beach involving Plaintiff. (ECF No. 52 ¶13.) Deputy Vlahakis arrived on the scene and told Plaintiff to get on the ground. (*Id.* ¶12.) After Plaintiff told Deputy Vlahakis that he had a broken arm and would therefore be slow getting to the ground due to the pain, Deputy Vlahakis pointed his taser at Plaintiff and proceeded to tase him. (*Id.* ¶¶15, 16.) Plaintiff alleges that he felt an "adverse effects" due to the intensity of the voltage and removed the taser cord. (*Id.* ¶17.) Deputy Vlahakis then tased him again. (*Id.* ¶18.) Thereafter, Deputy Vlahakis handcuffed Plaintiff while Plaintiff again told Deputy Vlahakis that he had a broken arm and was in "a lot of pain." (*Id.* ¶20.) Deputy Vlahakis then took Plaintiff to Scripps Hospital to receive treatment for his taser wounds and a tetanus shot. (*Id.* ¶23.) When Plaintiff asked the doctor to look at his arm, however, Deputy Vlahakis refused. (*Id.* ¶24.) Deputy Vlahakis finally booked Plaintiff into San Diego Central Jail, with Plaintiff still in "excruciating pain" from his broken wrist. (*Id.* ¶¶25–26.)

### B. Booking Cell, San Diego Central Jail

Plaintiff alleges that after arriving at the jail, he was in the custody of multiple deputies—Smith, McGarvey, Seitz, Parent, Choufani, Linthicum, and Pirri. (*Id.* ¶27.) Each individual Deputy Defendant is alleged to have been responsible for overseeing the management, care, and treatment of inmates, like Plaintiff, during the time that Plaintiff was at the jail. (*Id.* ¶¶5–11.) Plaintiff claims that while in custody, Plaintiff needed urgent medical care for his fractured wrist; Plaintiff communicated to each Deputy Defendant of his "need for urgent medical care for his left fractured wrist." (*Id.* ¶¶26–33.) Although each of the Deputy Defendants were informed about Plaintiff's medical needs, each apparently "refused to remedy or assist at all." (*Id.*) Plaintiff also communicated to each Deputy Defendant that there was a "toilet that did not work and [which] was flooded with aged fecal matter and urine" in his cell. (*Id.*) Each Deputy Defendant shunned Plaintiff and "did nothing to help" when Plaintiff asked for

assistance. (*Id.*) Additionally, because of conditions of the toilets and, more generally, the holding cells, Plaintiff was allegedly exposed to human waste throughout his time in custody in jail.[3] (*Id.* ¶¶27–33, 36–37.)

## IV. DISCUSSION

### A. Deliberate Indifference Claims

Plaintiff alleges that the Deputy Defendants were deliberately indifferent to his fractured left wrist. (*Id.* ¶¶48–49.) The Court previously rejected earlier versions of this claim because Plaintiff failed to demonstrate that each Deputy Defendant had "individual culpability" with respect to the alleged denial of medical care, as liability under § 1983 requires. (ECF No. 17, at 9; No. 47, at 12.) As the Court outlined in its prior order, "[a] Plaintiff cannot hold an officer liable based on [] involvement in a group, but must rather show 'integral participation' in the alleged constitutional violation." (ECF No. 40, at 14 (quoting *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).)

Under governing law, each Deputy Defendant must have been an "integral participa[nt]" or "personally involved" in the alleged unlawful conduct. *Bonivert*, 883 F.3d at 879. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). In accordance with this requirement, the Ninth Circuit in *Jones v. Williams* held that a plaintiff alleging an unconstitutional search of her residence by a team of officers was not entitled to her proposed jury instruction, as the "proposed instruction would have permitted the jury to find the individual officers liable for *merely being present* at the

---

[3] In his TAC, Plaintiff recounts that for two days, he was deprived of a working toilet and drinkable water. (ECF No. 41, at 5.) The toilets in the holding cells were inoperable, clogged, and overrun from the feces and urine of others who had used it previously. (*Id.*) The build-up in the toilet was so extreme that it had "beg[u]n to breed flies in it along with the waste." (*Id.*) The taint of filth and grime also pervaded Plaintiff's water source, since there was "fecal matter in the sink . . . where the spicket [sic] to drink water is located." (*Id.*) "All around and in the cells were . . . waste mixture" tracked by other detainees who unsuccessfully tried to flush the toilet and flooded the cell. (*Id.*)

scene of the search." 297 F.3d 930, 937 (9th Cir. 2002) (emphasis added).

Plaintiff's FAC cures the deficiencies from his TAC. Unlike his TAC, Plaintiff's operative complaint alleges individual liability based on the Deputy Defendants' particular actions or omissions. (ECF No. 52 ¶¶5–11.) While his earlier pleading failed to individualize the actions of each Deputy Defendant, repeating familiar refrains, such as "all named Defendants individually have acted with individual culpability," (ECF No. 47 ¶12), Plaintiff's FAC states factual allegations, that, if true, individualize the actions of each Deputy Defendant beyond "mere presence." *Bonivert*, 883 F.3d at 879.

First, the FAC states that Plaintiff "told" each Deputy Defendant "about his need for medical care" while in the Deputy Defendants' custody. (ECF No. 52 ¶¶27–34.) Such an allegation, taken in the light most favorable to Plaintiff, demonstrates the nature and extent of the Deputy Defendants' personal involvement, or "integral participation," in the denial of Plaintiff's medical need. *Chuman*, 76 F.3d at 294. Second, it alleges that each Deputy Defendant had a duty to oversee the "custody,care [sic] and treatment of Plaintiff." (ECF No. 52 ¶¶5–11.) Assumed true, the allegations fit squarely within the bounds of § 1983 liability.

Defendants assert that the Court should dismiss Plaintiff's FAC because Plaintiff indicates that the booking incident took place "on or about January 13[,] 2016," rather than on April 13, 2016, when all of the named Deputy Defendants worked in the booking area. (ECF Nos. 52 ¶12, 54-1 at 7.) However, it appears to the Court that Plaintiff's allegation of the January 13, 2016 date in the FAC is a mere scrivener's error. There has been no dispute in the course of this litigation that the booking incident occurred on April 13, 2016. In fact, Defendants have acknowledged on several occasions that Plaintiff's claims pertained to April 13, not January 13. (*See, e.g.*, ECF No. 42-1 (motion to dismiss TAC), at 4, 6, 8, 11, 12 ("Plaintiff contends that on April 13 2016, Deputy Vlahakis responded to a call two blocks away from an incident involving Plaintiff in Imperial Beach, California . . . . At some point, Deputy Vlahakis brought Plaintiff to the San Diego County Jail."); *see* ECF No. 25-2 ¶2 (Decl. of Kapualani Brown in Support of

Defendant Vlahakis's Motion to Dismiss Second Amended Complaint, dated May 23, 2018) ("I have researched the claims database to determine whether any government tort claim brought by Alexander Jacome or the County of Sand Diego in connection with an incident in Imperial Beach or a County Jail from April 13, 2016.").) Given Defendants' patent awareness that the alleged booking incident occurred on April 13, 2016, the Court declines to dismiss the FAC based on Plaintiff's mere clerical error.

The Deputy Defendants also argue that Plaintiff's FAC is not plausible on its face because it is "highly unlikely that all seven Deputy Defendant bear the exact same responsibilities in the [San Diego County Jail], had the exact same interaction with Plaintiff, and reacted to Plaintiff's alleged urgent medical need in the exact same way." (ECF No. 54-1, at 7.) However, given that courts *must* assume the truth of all factual allegations and *must* construe all inferences from them in the light most favorable to Plaintiff, the plausibility of non-conclusory facts has no bearing on the Court's decision. *See Thompson*, 295 F.3d at 895; *Cahill*, 80 F.3d at 337–38. Thus, the Deputy Defendants' prima facie implausibility argument falls short.

In sum, Plaintiff efficaciously stated an individualized claim against each Deputy Defendant with respect to deliberate indifference. Accordingly, the Court **DENIES** the Deputy Defendants' motion to dismiss Plaintiff's deliberate indifference claim.

### B. Conditions of Confinement Claim

Plaintiff's remaining claim arises out of his detention at the intake/booking cells of the San Diego Central Jail. Plaintiff alleges that the conditions of his confinement denied him "the minimal measure of life's necessities." (ECF No. 17, at 11 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).) The Court previously rejected Plaintiff's claim because he had "failed to allege plausible facts that would link the actions of the Deputy Defendants to his conditions of confinement." (ECF No. 47, at 15.)

Plaintiff's FAC successfully addresses the deficiencies previously identified by the Court. (*See id.* at 15–16.) As recounted in Section II(B), *supra*, Plaintiff pertinently alleges that (1) he was exposed to human waste while in his booking cell; (2) he was

confronted with an unusable toilet that was "flooded with aged fecal matter and urine" during his stay, thus creating "abus[ive]" conditions in his cell; (3) Deputy Defendants each had a responsibility to oversee the management, care, and treatment of Plaintiff while he was in their custody; and (4) Plaintiff was met with inaction by each Deputy Defendant after individually telling them about the unusable and flooded toilet and conditions in his holding cell. (ECF No. 52 ¶¶5–11, 26–33.)

The Deputy Defendants argue that Plaintiff "implausibly alleges a *de facto* group liability by repeating the same allegations [alleged in his previous complaints] verbatim against each Deputy Defendant . . . ." (ECF No. 54-1, at 9.) Yet, again, this Court *must* take plaintiff's non-conclusory factual allegation as true. *See Thompson*, 295 F.3d at 895; *Cahill*, 80 F.3d at 337–38. Unlike his TAC, Plaintiff's allegations, taken as true, individualize the actions of each Deputy Defendant beyond "mere presence at the scene." *See Bonivert*, 883 F.3d at 879 (citing *Jones*, 297 F.3d at 935–936).

As with the deliberate indifference claim, Plaintiff has alleged facts that, if taken as true, link the actions of each Deputy Defendant to Plaintiff's conditions of confinement. *Cf. Johnson v. Crawford*, No. 08-4023-CV-C-SOW, 2008 WL 4596150, at *3 (W.D. Mo. Oct. 14, 2008) (mere presence of defendant in housing unit without accompanying allegations that defendant had personal knowledge of plaintiff's needs or a significant delay of access to a restroom insufficient to state a claim for deliberate indifference). Plaintiff has thus succeeded in alleging that each Deputy Defendant were "personal[ly] involve[d]" and "individually liable" in the alleged constitutional violation under § 1983. *See id.* at 934, 936. The Court therefore **DENIES** Deputy Defendants' motion to dismiss the conditions of confinement claim.

//
//
//
//
//

## V. CONCLUSION

To conclude, both of Plaintiff's FAC allegations—conditions of confinement and deliberate indifference—survive Defendants' motion to dismiss. However, Plaintiff's excessive force claim does not. As explained *supra*, although the Court has previously denied motions to dismiss Plaintiff's excessive force claim, (ECF Nos. 40, 47), the Court cannot consider the claim unless Plaintiff continues to allege it in his newer complaints. As a pro se litigant, Plaintiff "must be ensured meaningful access to the courts." *Rand*, 154 F.3d at 957.

Accordingly, to the extent that Plaintiff wishes to amend his FAC to include his previously-alleged excessive force claim against Deputy Vlahakis, (ECF No. 40, at 7), he is obliged to reallege his FAC with the additional claim by **October 31, 2019**. If Plaintiff does not file a fifth amended complaint to include the excessive force claim by this time, the Court will proceed solely based on the two claims plead in Plaintiff's FAC.

In light of the foregoing, the Court will:

- **DENY** Defendants' motion to dismiss Plaintiff's deliberate indifference and conditions of confinement claims.
- **STRIKE** references to Deputy Vlahakis as a defendant to Plaintiff's deliberate indifference and conditions of confinement claims. (ECF No. 52, at 2.)
- **GRANT** leave for Plaintiff to file a fifth amended complaint by **October 31, 2019**. This fifth amended complaint may include the three causes of action which this Court has sustained: (1) the excessive force claim against Deputy Vlahakis, as articulated in Plaintiff's second and third amended complaints, (2) the deliberate indifference claim, and (3) the conditions of confinement claim, which cleared the Rule 12(b)(6) bar with this order.[4]

---

[4] Plaintiff's fifth amended complaint must be "complete by itself, and without reference to any previous pleading," *Armenta v. Paramo*, Case No. 3:16-cv-02931-BTM-KSC, 2017 WL 3118775 (S.D. Cal. Jul. 21, 2017), meaning that Plaintiff must state all three causes of action in one document.

- To facilitate any amended pleading so filed, the Court **directs** the Court clerk to mail to Plaintiff a copy of his FAC (ECF No. 54), as well as his second amended and third amended complaints (ECF Nos. 17, 41.)

**IT IS SO ORDERED.**

Dated: September 9, 2019

_____
Hon. Gonzalo P. Curiel
United States District Judge